Edwin C. OLSEN IV, Appellant,

v.

**COMMISSION FOR LAWYER DISCIPLINE, Appellee.**

No. 05–09–00945–CV.

Court of Appeals of Texas, Dallas.

Aug. 9, 2011.

Jeff Forrest Smith, Dallas, TX, R. Deryl Edwards, Jr., Joplin, MO, for Appellant.

Susan Morgan Farris, Office of the Chief Disciplinary Counsel, Jeremy D. Kernodle, Haynes and Boone, LLP, Dallas, TX, Cynthia W. Hamilton, Senior Appellate Counsel, Office of the Chief Disciplinary Co., Austin, TX, for Appellee.

Before Justices MOSELEY, MARTIN RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice MARTIN RICHTER.

Appellant Edwin C. Olsen IV (Olsen) appeals the trial court's judgment of disbarment. In sixteen issues, Olsen generally contends: (1) the trial court erred in granting the motion for partial summary judgment filed by the Commission for Lawyer Discipline (the Commission); (2) the trial court erred in concluding he committed violations of the disciplinary rules; (3) disbarment was not an appropriate sanction in this case; and (4) the trial court erred in ordering him to pay attorney fees. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This disciplinary proceeding arose from Olsen's representation of Mary Ellen Logan Bendtsen (Bendtsen). Bendtsen, 88 years of age, lived alone in a large, old house on historic Swiss Avenue. In 2002, Bendtsen executed a will leaving her entire estate to her only child, Frances Ann

Giron (Giron), and naming Giron the executrix of her estate.

On January 12, 2005, Bendtsen was admitted to Baylor Hospital with a head injury and sprained ankle. Bendtsen executed a medical power of attorney giving Giron authority to make decisions about her care. While in the hospital, Bendtsen was examined by a licensed psychiatrist who determined Bendtsen was suffering from dementia. Justin Dale Burgess (Burgess), Mark Patrick McCay (McCay), and Olsen visited Bendtsen in the hospital. During their visit, Bendtsen executed a general power of attorney and a medical power of attorney, granting authority to McCay to make medical and financial decisions on her behalf. Olsen prepared the powers of attorney. He also prepared a declaration of revocation, revoking the power of attorney Bendtsen previously gave to Giron. The following day, Giron tried to move her mother to another facility but discovered she was unable to do so because her power of attorney had been revoked.

On January 21, 2005, Giron filed an application seeking temporary and permanent guardianship of Bendtsen. In her application, Giron asserted that Bendtsen was "totally incapacitated due to senility and dementia" and that McCay's power of attorney was fraudulent. The same day, Giron transferred Bendtsen from Baylor Hospital to Ashley Court, a residential rehabilitation center.

On January 31, 2005, Bendtsen was discharged from Ashley Court without Giron's knowledge, and taken to the courthouse to attend the hearing on Giron's motion for emergency order in the guardianship case. Olsen represented Bendtsen at the hearing. At the conclusion of the hearing, the court stated that it wanted to continue the hearing until February 19, and asked Olsen "Where is Ms. Bendtsen now? What is her current residence?"

Olsen replied, "she was at Ashley Court before." A few days later, Giron learned that Bendtsen was no longer at Ashley Court and had returned to her home on Swiss Avenue. Giron filed a motion for emergency order to return Bendtsen to Ashley Court, and asserted that Olsen had previously "failed to adequately inform the Court" regarding Bendtsen's residence.

On February 22, 2005, Bendtsen suffered a massive stoke and was taken to the Baylor Hospital emergency room. Olsen prepared a will for Bendtsen, naming Dixie Tidwell (Tidwell) executrix and leaving one chair to Giron, her jewelry to Beatrice Grayson except for one brooch left to Rose Cline (Cline), and the remainder of her estate, which included her house on Swiss Avenue, to Burgess and McCay. Olsen took the will to the emergency room for Bendtsen to sign. Olsen handed Bendtsen two pages and Bendtsen executed the will in the presence of two witnesses, Tidwell and Cline. Tidwell videotaped Bendtsen signing the will. The testimonium clause, which was the last paragraph of the will before Bendtsen's signature, the attestation clause, and the witnesses' signatures after the attestation clause appeared as follows:

IN TESTIMONY WHEREOF, I hereunto set my name to this, my Last Will and Testament, consisting of this and one preceding page, which I am also initialing for the purpose of identification, all in the presence of [Rose Cline] and [Dixie Tidwell], who witness the same at my request on this the 22nd day of February, 2005.

{Mary Ellen Logan Bendtsen}

The foregoing instrument, consisting of this and the preceding page, was signed, published and declared by MARY ELLEN LOGAN BENDTSEN, Testatrix, to be her Last Will and Testament, in our presence and we, at

her request and in the presence of each other, have hereunto subscribed our names as witnesses this 22nd day of February, 2005.

{Dixie L.M. Tidwell}

WITNESS

{Rose M. Cline}

WITNESS

SUBSCRIBED AND SWORN TO before me by the said MARY ELLEN LOGAN BENDTSEN, Testatrix, and [Rose Cline] and [Dixie L.M. Tidwell] Witnesses, this 22nd day of February, 2005

{Marian Gibson}

Notary Public, State of Texas

(Names in "[ ]" were hand printed by Tidwell; names in "{ }" were signed by the person named.) Despite statements in the will to the contrary, Tidwell's signature below the attestation clause was not entered in Bendtsen's presence, and the notary was not present when Bendtsen signed the will. *See In re Estate of Bendtsen*, 230 S.W.3d 823, 825–26 (Tex. App.-Dallas 2007, pet. denied).

After Bendtsen signed the will, Tidwell put down the camera and wrote her name and Cline's name in the blanks in the testimonium clause. *Id.* Cline then signed below the attestation clause. *Id.* Olsen, Cline and Tidwell then took the will to the notary's house where Tidwell signed below the attestation clause in the notary's presence but outside Bendtsen's presence. *Id.* On a new third page, the notary signed and notarized a jurat, stating the will had been "subscribed and sworn to before me by the said Mary Ellen Logan Bendtsen, Testatrix, and Rose Cline and Dixie L.M. Tidwell, Witnesses, this 22nd day of February, 2005." However, neither Bendtsen nor Cline signed the will in the presence of the notary.

Bendtsen died on March 2, 2005. Hours later, Olsen filed an application for probate of will and issuance of letters testamentary on behalf of Dixie Tidwell, the executrix designated in the 2005 will. Olsen attached a three-page will consisting of the two pages Bendtsen signed in the emergency room, and the one-page jurat later signed and notarized by the notary. Later that day, Giron filed an application for probate of will and issuance of letters testamentary, seeking to have the 2002 will probated. After learning of the will filed by Olsen, Giron filed a petition contesting the 2005 will.

Olsen represented Tidwell throughout the will contest proceedings. The probate court ultimately granted Giron's motion for summary judgment, set aside the 2005 will, and admitted the 2002 will to probate. This Court affirmed the judgment of the trial court. *Id.*

Giron filed a complaint against Olsen with the State Bar of Texas. After an investigation, the Commission for Lawyer Discipline filed its original disciplinary petition, alleging Olsen had violated various provisions of the Texas Disciplinary Rules of Professional Conduct and committed the criminal offenses of attempted theft and securing execution of document by deception. On October 10, 2008, the Commission filed its first amended disciplinary petition. The same day, the Commission filed its motion for partial summary judgment on the issue of professional misconduct for violations of disciplinary rules 3.03(a), 3.03(b), 3.08(a), 8.04(a)(1), and 8.04(a)(3), arguing that the undisputed facts established Olsen's violations as a matter of law. In support of its motion, the Commission submitted: (1) Bendtsen's 2005 will and the application for its probate, (2) Olsen's verified responses to the Commission's request for admissions, (3) affidavit of Susan Farris, lead counsel and attorney of record for the Commission, attaching a video recording of Bendtsen's

purported signing of the 2005 will, (4) a copy of the reporter's record from the January 31, 2005 hearing on Giron's motion for emergency order, (5) an affidavit from Judge Robert E. Price, (6) a copy of the "Opposition to Applicant's Motion for Emergency Order" prepared and filed by Olsen on February 7, 2005, (7) Bendtsen's 2002 will and the application for its probate, and (8) a copy of the "original petition contesting will" filed by Giron.

Olsen filed a "verified" response in opposition to the Commission's motion. In support of his response, Olsen submitted: (1) his own affidavit, (2) the affidavit of Burgess, (3) the affidavit of McCay, (4) Giron's February 2, 2005 motion for emergency order, (5) a proposed order for Giron's February 2, 2005 motion for emergency order, and (6) a copy of the transcript and exhibits of the November 6, 2008 deposition of Judge Robert Price. The Commission objected to Olsen's "verified" response as improper, arguing that verified responses are not proper summary judgment proof. The Commission also moved to strike the affidavit of Olsen because it failed to meet statutory requirements for an affidavit. Instead of stating such facts as would be admissible in evidence and showing the affiant was competent to testify as to the matters stated therein, Olsen's affidavit merely incorporated all the factual statements made in the response "as if stated in full herein." Finally, the Commission moved to strike the affidavits of Burgess and McCay to the extent they referenced an "Exhibit 1" that was not attached to the affidavits.

The trial court set a hearing on the Commission's motion for the morning of December 5, 2008. Olsen moved to continue the hearing for the following reasons: (1) he had a scheduling conflict because he needed to attend a hearing in a different court already set for the same morning, and (2) he needed additional time to complete the deposition of Judge Price. The trial court initially denied Olsen's motion for continuance. Olsen then filed an emergency motion for continuance which the court granted, moving the hearing to the afternoon of December 5, 2008. The day of the hearing, Olsen filed a request to supplement his summary judgment evidence and amend the controverted affidavits. Olsen personally appeared at the hearing on the Commission's motion for partial summary judgment.

On December 11, 2008, the trial court signed an order sustaining the Commission's objections to Olsen's summary judgment evidence and ordering that Olsen's verified response and affidavit be stricken from the record. The same day, the trial court signed a second order, granting the Commission's motion for partial summary judgment. On January 12, 2009, Olsen filed a motion for new trial which was overruled by operation of law.

On April 21, 2009, the Commission filed its notice of partial nonsuit of its allegation that Olsen committed the criminal offenses of attempted theft and securing execution of document by deception. On May 8, 2009, the trial court held a sanctions hearing pursuant to Rule 3.02 of the Texas Rules of Disciplinary Procedure. Olsen failed to appear. After the Commission presented evidence and argument, the trial court signed a final judgment disbarring Olsen, permanently enjoining him from practicing law in the State of Texas, and ordering Olsen to pay the Commission's attorneys' fees in the amount of $10,732.70. On June 8, 2009, Olsen filed an amended motion for new trial, which the trial court denied on July 2, 2009. This appeal followed.

ANALYSIS

Olsen's sixteen issues fall into four general categories. We address his issues by category, rather than in numerical order.

## A. Summary Judgment Issues

The Commission filed a motion for partial summary judgment, asserting Olsen's conduct in violating disciplinary rules 3.03(a), 3.03(b), 3.08(a), 8.04(a)(1), and 8.04(a)(3), constituted professional misconduct as a matter of law and that there were no genuine issues of material fact. The Commission charged Olsen with (1) knowingly filing a three-page will with the probate court when the actual will that was signed consisted of two-pages; (2) knowingly filing a will with the probate court that included a false jurat; (3) making statements in person and in pleadings that were dishonest and constituted a misrepresentation to the court; and (4) refusing to withdraw from representation when he knew he would be a witness. In issues one through seven, Olsen argues the trial court erred in granting the Commission's motion for partial summary judgment.

### Standard of Review

■ We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Mid–Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex.2007); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex.2003). A party moving for traditional summary judgment has the burden to establish that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002). The movant bears the burden of proof and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Sw. Elec. Power*, 73 S.W.3d at 215; *Nixon*, 690 S.W.2d at 549. When the trial

court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. *See Provident Life*, 128 S.W.3d at 216; *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 577 (Tex.App.-Dallas 2007, no pet.).

### Issues Three and Four

In his third issue, Olsen asserts the trial court erred when it granted summary judgment that Olsen violated rule 8.04(a)(3) with respect to Bendtsen's 2005 will and accompanying notary jurat. First, Olsen argues the trial court erred in granting summary judgment that Bendtsen's 2005 will consisted solely of two pages and was not accompanied by a third page bearing a notary's jurat, signature and seal. Second, Olsen argues that filing the three-page will instead of the two-page will did not constitute dishonesty and misrepresentation. In Olsen's fourth issue, he asserts the trial court erred when it granted summary judgment that Olsen violated rule 8.04(a)(3) because the notary's jurat language falsely stated Bendtsen signed the will before the notary.

Disciplinary rule 8.04(a)(3) states: "[a] lawyer shall not ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Tex. Disciplinary Rules Prof'l Conduct R. 8.04(a)(3), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2005). The disciplinary rules define "fraud" to include "conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information." Tex. Disciplinary Rules Prof'l Conduct terminology. Because the rules do not define "dishonesty," "deceit," or "misrepresentation," courts have given those terms their ordinary meanings, and have concluded that they generally mean a "lack

of honesty, probity, or integrity in principle" and a "lack of straightforwardness." *See Brown v. Comm'n for Lawyer Discipline*, 980 S.W.2d 675, 680 (Tex.App.-San Antonio 1998, no pet.) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 650 (1981)).

■ The Commission contends Olsen violated rule 8.04(a)(3) by filing a three-page will when Bendtsen had signed a two-page will. The Commission's evidence established that Olsen prepared the will Bendtsen signed on February 22, 2005. According to the language of the document itself, the will consisted of two pages. Olsen admitted presenting it to Bendtsen for her signature. The Commission's evidence included a copy of the video recording made of Bendtsen's purported signing of the will that Olsen filed for probate on March 2, 2005, and it is clear from the video that the document Olsen presented to Bendtsen for execution consisted of two pages. However, when Olsen filed the application to have the will probated, he attached a three-page will. The Commission argued that these undisputed facts established a violation of rule 8.04(a)(3) as a matter of law.

On March 2, 2005, Olsen filed an application for probate of will and issuance of letters testamentary in Probate Court No. 3, Dallas County, Texas. Attached to the application was a three-page document entitled "Last Will and Testament of Mary Ellen Logan Bendtsen" dated February 22, 2005. The third page of Bendtsen's 2005 will consisted of a jurat, signed by the notary public, which stated "SUBSCRIBED AND SWORN TO before me by the said MARY ELLEN LOGAN BENDTSEN." However, the Commission's evidence established that the notary public and Bendtsen did not sign the will in front of each other. Olsen knew this fact as he was present both when Bendtsen signed the will and later when the notary signed the jurat. Olsen admitted the notary public was not present when

Bendtsen signed the will. He also admitted the notary public did not sign the jurat to Bendtsen's 2005 will in the presence of Bendtsen. Nevertheless, Olsen attached the false jurat to the two-page will signed by Bendtsen and filed it with the Probate Court, certifying to the court that the will was valid and was the one executed by Bendtsen. The application for probate signed by Olsen states that Bendtsen's 2005 will was "made self proved in the manner prescribed by law." The Commission argued Olsen's actions in filing a will with the probate court that included a jurat he knew was false and in falsely representing to the court that the will was self-proving constituted dishonesty and misrepresentation and was thus a violation of rule 8.04(a)(3).

Once a movant establishes its right to summary judgment as a matter of law, the burden shifts to the non-movant to raise a fact issue precluding summary judgment. *Fry v. Comm'n for Lawyer Discipline*, 979 S.W.2d 331, 335 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Thus, because the Commission established its right to judgment as a matter of law, the burden shifted to Olsen to present evidence raising a fact issue precluding summary judgment. *Id.*

In his response, Olsen argued that the third page consisted only of verbiage for the notary signature and stamp necessary for a self-proving affidavit, and therefore was not "technically" part of the will. According to Olsen, that is why the language of the will stated it consisted of "this and one preceding page," and that is why he only presented two pages to Bendtsen for signature. He argued that the third page was in his brief case the entire time but since Bendtsen did not need to sign it, he did not present it to her. Olsen referenced his affidavit and the affidavits of Burgess and McCay in support of his ar-

gument. However, this summary judgment evidence was stricken by the trial court.

Olsen admitted that notwithstanding the language of the jurat, the notary did not witness Bendtsen's signature. However, he argued the jurat was not intentionally drafted for dishonest reasons or reasons of misrepresentation. Instead, it was "erroneously not modified along with the attestation clause in the last minute rush to accommodate the notary's refusal to go to Baylor's Emergency room." Nevertheless, despite knowing the jurat was "erroneous," Olsen filed the will and the jurat with the probate court. His only summary judgment evidence in support of his argument that the jurat was not false was his affidavit and the affidavits of Burgess and McCay. However, Olsen's affidavit was completely stricken by the trial court, and the Commission's objections to the Burgess and McCay affidavits were sustained "to the extent of relevance with respect to the Exhibit." The "Exhibit" was Bendtsen's 2005 will. Olsen's remaining summary judgment evidence consisted of Giron's motion for emergency order to return Bendtsen to Ashley Court, a proposed order with respect to Giron's emergency order, and the transcript from the deposition of Judge Price. Because Olsen's summary judgment evidence with respect to Bendtsen's 2005 will and jurat was stricken, we conclude Olsen failed to raise a genuine issue of material fact to preclude the Commission's right to summary judgment on its claim that Olsen violated disciplinary rule 8.04(a)(3) with respect to the 2005 will and false jurat. We overrule Olsen's third and fourth issues.

The trial court's order granting summary judgment did not specify the grounds upon which it was granted. We may affirm the judgment if any of the theories advanced are meritorious. *See Provident Life*, 128 S.W.3d at 216; *Kast-*

*ner*, 231 S.W.3d at 577. Because we conclude the Commission proved that Olsen's conduct violated disciplinary rule 8.04(a)(3) as a matter of law and that there were no genuine issues of material fact, we need not address issues one, two, five, six and seven. *See* Tex.R.App. P. 47.1.

### *Issue Twelve*

 In his twelfth issue, Olsen complains he was denied his "right to trial by jury" under the Texas Constitution because the trial court erroneously granted the Commission's motion for summary judgment. In support of his contention, Olsen provides the following quotation from the Texas Supreme Court in *City of Houston v. Clear Creek Basin Authority,* "[t]he function of the summary judgment is not to deprive a litigant of his right to a trial by jury, but to eliminate patently unmeritorious claims and untenable defenses." 589 S.W.2d 671, 678 n. 5 (Tex. 1979). Olsen then states "for the reasons set forth above, the trial court should not have granted the Commission's *Motion for Partial Summary Judgment.*" Olsen's contention is unsupported by clear and concise argument, citation to the record, or citation to legal authority. *See Burke v. Ins. Auto Auctions Corp.,* 169 S.W.3d 771, 775 (Tex.App.-Dallas 2005, pet. denied); Tex.R.App. P. 38.1(i). We have no duty, or even right, to perform an independent review of the record and applicable law to determine if there was error. *See Valadez v. Avitia,* 238 S.W.3d 843, 845 (Tex.App.-El Paso 2007, no pet.). Failure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint. *Id.* We conclude Olsen waived this issue because it is inadequately briefed. Tex.R.App. P. 38.1(i). Issue twelve is overruled.

### B. Procedural Issues

In issues eight, nine, ten, eleven, and fifteen, Olsen complains of various rulings

by the trial court in the case below. We review these issues to determine whether the trial court abused its discretion.

### Issue Eight

Olsen complains that the trial court abused its discretion by only giving him three hours notice of the summary judgment hearing date and time. However, the record reflects that Olsen received notice of the December 5, 2008 hearing as early as October 31, 2008. The summary judgment hearing was originally scheduled to take place at 10:30 a.m. on December 5th. Olsen filed a motion for continuance, asking for more time to complete the deposition of Judge Price, and advising the trial court that he had a conflicting hearing in a different court scheduled for December 5, 2008, at 10:00 a.m. The Commission opposed Olsen's request for a continuance and the trial court denied Olsen's motion. On December 2, 2008, Olsen filed an emergency motion for continuance, detailing why he needed to appear at the conflicting hearing in the morning, and again urging the trial court to grant his request for a continuance. On December 4, 2008, the trial court granted Olsen's emergency motion but only granted Olsen a continuance of several hours. The hearing was reset for December 5th at 2:00 p.m., after Olsen's other court setting was concluded. Olsen admits that he attended the December 5, 2008 hearing in person.

 It is well established that the granting or denial of a motion for continuance is within the trial court's sound discretion. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 800 (Tex.2002). "The exercise of such discretion will not be disturbed on appeal unless the record discloses a clear abuse of discretion." *State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 865 (Tex.1988). In determining whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery, we have con-

sidered the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *See Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 161 (Tex.2004). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* Here, the original petition was filed on March 13, 2008. The Commission filed its motion for partial summary judgment on October 10, 2008. Olsen was not required to file a response to the Commission's motion; however, if he chose to do so, his response was due on November 28, 2008. The summary judgment hearing was scheduled for December 5, 2008. Olsen had at least forty-five days within which to complete the discovery necessary to support his response. We conclude the trial court did not abuse its discretion in granting Olsen's continuance and rescheduling the summary judgment hearing for a time after Olsen's conflicting court setting. *Id.* Olsen's eighth issue is overruled.

### Issue Nine

 Olsen complains that the trial court abused its discretion by denying his request for the creation of a written record of the summary judgment hearing. However, no such record is required. *See Clear Creek Basin,* 589 S.W.2d at 677. Under rule 166a(c) of the Texas Rules of Civil Procedure, both the reasons for and the objections to summary judgment must be in writing and before the trial judge at the hearing. *Id.; see* Tex.R. Civ. P. 166a(c). Court reporters are neither necessary nor appropriate at summary judgment hearings because no testimony is received. *Clear Creek Basin,* 589 S.W.2d at 677; *Taylor v. State,* 2009 WL 4456143, at *1 (Tex.App.-Austin Dec. 2, 2009, pet.

denied) (mem. op.). We conclude the trial court did not abuse its discretion by denying Olsen's request for the creation of a written record of the summary judgment hearing. *See Clear Creek Basin*, 589 S.W.2d at 677. Olsen's ninth issue is overruled.

### Issue Ten

■■■■ Olsen complains that the trial court abused its discretion by striking Olsen's response verification and affidavit, and in sustaining the Commission's objections to portions of Burgess's and McCay's affidavits that pertained to Bendtsen's will. The trial court struck Olsen's verification because "verified responses are not proper summary judgment proof." *Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 42 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Webster v. Allstate Ins. Co.*, 833 S.W.2d 747, 749 (Tex.App.-Houston [1st Dist.] 1992, no pet.). A party may not support its response to a motion for summary judgment with a document in the form of an affidavit in which the party attempts to verify the truth and correctness of all "allegations and facts" in the response. *See Kabbani v. Papadopolous*, 2009 WL 469546, at *7 (Tex.App.-Houston [1st Dist.] Feb. 26, 2009, pet. denied) (mem. op.). Such a document amounts to nothing more than a verified responsive pleading, which is not competent summary judgment evidence. *Id.* Likewise, the trial court struck Olsen's affidavit because it failed to set forth facts and show the affiant's competence, and did not contain direct and unequivocal statements as required by rule 166a(f) of the Texas Rules of Civil Procedure. *See id.* Olsen's affidavit "incorporat[ed] all the factual statements made [in] Respondent's Response to Petitioner's Motion for Partial Summary Judgment AS IF STATED IN FULL HEREIN . . . ." To effectively oppose a motion for summary judgment, "the affidavit must *itself* set forth facts and show that the affiant is competent to testify to those facts." *Harmon v. Bank of West*, 2003 WL 1564826, at *4 (Tex.App.-Fort Worth Mar. 27, 2003, no pet.) (mem. op.); *see also Webster*, 833 S.W.2d at 749.

The trial court sustained the Commission's objections to the affidavits of Burgess and McCay to the extent they referred to an "Exhibit" that was not attached to the affidavits. Rule 166a(f) states: "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." TEX.R. CIV. P. 166a(f). Olsen argues this error was cured by his January 12, 2009 motion for a new trial and for leave to serve additional affidavits and amend the affidavits attached to his response. He further argues that the failure to attach the exhibit to the affidavits did not create an ambiguity because it was clear that Burgess and McCay were referring to Bendtsen's 2005 will in their affidavits. Therefore, he complains the trial court's ruling was arbitrary, unreasonable and constitutes an abuse of discretion.

■■■■ Failure to attach sworn or certified copies of the extraneous documents referred to in an affidavit itself as required by rule 166a(f) of the Texas Rules of Civil Procedure "constitutes a defect in the substance of the affidavit, and the trial court [is] not required to give the offering party the chance to amend." *Gorrell v. Texas Utilities Elec. Co.*, 915 S.W.2d 55, 60 (Tex. App.-Fort Worth 1995, writ denied). We conclude the trial court did not abuse its discretion in striking Olsen's verification and affidavit, and sustaining the Commission's objections to the affidavits of Burgess and McCay. Olsen's tenth issue is overruled.

### Issue Eleven

Olsen complains that the trial court erred by denying his motion to (1) cure defects in his summary judgment evidence, (2) supplement his summary judgment evidence with additional affidavits and discovery, and (3) continue the summary judgment hearing until the deposition of Judge Price was completed. On December 5, 2008, the day of the hearing on the Commission's motion for partial summary judgment, Olsen filed a "verified request to serve additional affidavits and summary judgment evidence and Rule 166a(f) request to amend affidavits. In his request, Olsen agreed to amend the affidavits found objectionable by the Commission and requested leave to do so. Olsen also requested permission to supplement affidavits once deposition transcripts were available from the depositions of Judge Price and McCay. Finally, Olsen requested permission to secure affidavits from Tidwell and Cline, who were unavailable over the Thanksgiving weekend.

Olsen contends he should have been allowed to revise his defective affidavits because Rule 166a(f) provides that defects in the form of affidavits will not be grounds for reversal. TEX.R. CIV. P. 166a(f). However, as noted above, Olsen's affidavits were substantively defective. Therefore, the trial court was not required to give Olsen the opportunity to amend the defective affidavits. *See Gorrell*, 915 S.W.2d at 60. With respect to the deposition of Judge Price, Olsen conducted one hour of the deposition and attached a copy of the transcript to his response. Olsen did not specify what evidence he hoped to procure by continuing the deposition, and did not detail the materiality and purpose of the discovery sought. With respect to the deposition of McCay, Olsen had already attached an affidavit from McCay to his response. He did not explain to the trial court why it was necessary to continue the hearing until the transcript from McCay's deposition was available. With respect to Tidwell and Cline, Olsen stated he could not obtain their affidavits because they were not available over the extended Thanksgiving weekend. However, Olsen did not provide the trial court with a description of his diligence in seeking to obtain affidavits from Tidwell and Cline prior to that time. We conclude the trial court did not abuse its discretion in denying Olsen's request to amend and supplement his summary judgment evidence. *See Two Thirty Nine Joint Venture*, 145 S.W.3d at 161. Olsen's eleventh issue is overruled.

### Issue Fifteen

After the trial court signed the final judgment of disbarment on May 8, 2009, Olsen filed a first amended verified motion for new trial. According to the record, Olsen's motion sought to set aside a partial summary judgment granted after a hearing attended by Olsen, and a final judgment of disbarment after a sanction hearing that Olsen failed to attend. The trial court denied Olsen's motion without conducting a hearing. Olsen argues the trial court erred by refusing to conduct a hearing on Olsen's verified motion for new trial regarding the default disbarment judgment.

Generally, a hearing on a motion for a new trial is not mandatory. *Landis v. Landis*, 307 S.W.3d 393, 394 (Tex.App.-San Antonio 2009, no pet.). A trial court is only required to conduct a hearing on a motion for new trial when the motion presents a question of fact upon which evidence must be heard. *Id.* On appeal, Olsen complains that the trial court denied his verified motion without conducting the required hearing. Olsen then cites to *Fluty v. Simmons Co.*, 835 S.W.2d 664, 667 (Tex.App.-Dallas 1992, no writ), and provides the following parenthetical: "[a]

motion for new trial to set aside a default judgment is a complaint on which evidence must be heard." Olsen's brief provides record citations to his first amended verified motion for new trial, and the trial court's order denying Olsen's motion. Olsen also provides citation to one case—the *Fluty* opinion—to support his argument that a hearing was required. Olsen provides no argument or analysis to suggest how the conclusions in *Fluty* apply to the case at hand. Olsen provides no argument or analysis to support his suggestion that the trial court's final judgment of disbarment was a default judgment.

An appellant's brief must contain a clear and concise argument that includes appropriate citations to legal authority and the appellate record. *Valadez*, 238 S.W.3d at 845. This requirement is not satisfied by merely uttering brief, conclusory statements unsupported by legal citations. *Id.* It is not the duty of this Court to review the record, research the law, and then fashion a legal argument for Olsen when he has failed to do so. *Canton–Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931–32 (Tex.App.-Houston [14th Dist.] 2008, no pet.). We conclude Olsen has waived issue fifteen because it is inadequately briefed. Tex.R.App. P. 38.1(i). Olsen's fifteenth issue is overruled.

### C. Sanctions and Attorneys Fees

In issues thirteen, fourteen, and sixteen, Olsen asserts the trial court erred in electing to disbar him and in ordering him to pay the Commission's attorney's fees. In issue thirteen, Olsen alleges the trial court erred by not considering all of the factors outlined by rule 3.10 of the Texas Rules of Disciplinary Procedure in determining the appropriate sanction. In issue fourteen, Olsen argues that disbarment was not a just punishment. Finally, in issue sixteen, Olsen contends there is no evidence to support the reasonableness of the Commission's attorney's fees.

A trial court has broad discretion to determine the consequences of professional misconduct. *State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex. 1994); *Butler v. Comm'n for Lawyer Discipline*, 928 S.W.2d 659, 666 (Tex.App.-Corpus Christi 1996, no writ) ("trial court has broad discretion to determine whether an attorney guilty of professional misconduct should be reprimanded, suspended, or disbarred"); *Minnick v. State Bar of Texas*, 790 S.W.2d 87, 92 (Tex.App.-Austin 1990, writ denied) ("punishment to be assessed . . . was a matter addressed to the sound discretion of the trial court"). The judgment of a trial court in a disciplinary proceeding may be so light, or so heavy, as to constitute an abuse of discretion. *Kilpatrick*, 874 S.W.2d at 659. We may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Landerman v. State Bar of Texas*, 247 S.W.3d 426, 433 (Tex.App.-Dallas 2008, pet. denied); *Rodgers v. Comm'n for Lawyer Discipline*, 151 S.W.3d 602, 618 (Tex.App.-Fort Worth 2004, pet. denied); *Eureste v. Comm'n for Lawyer Discipline*, 76 S.W.3d 184, 202 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The mere fact that a trial court may decide a matter differently than an appellate court does not demonstrate an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

### *Issues Thirteen and Fourteen*

Olsen complains that in deciding the appropriate sanction for Olsen, the trial court failed to consider all twelve of the factors set forth in rule 3.10 of the Texas Rules of Disciplinary Procedure. According to rule 3.10, the court shall consider:

A. The nature and degree of the Professional Misconduct for which the Respondent is being sanctioned;

B. The seriousness of and circumstances surrounding the Professional Misconduct;

C. The loss or damage to clients;

D. The damage to the profession;

E. The assurance that those who seek legal services in the future will be insulated from the type of Professional Misconduct found;

F. The profit to the attorney;

G. The avoidance of repetition;

H. The deterrent effect on others;

I. The maintenance of respect for the legal profession;

J. The conduct of the Respondent during the course of the Committee action;

K. The trial of the case; and

L. Other relevant evidence concerning the Respondent's personal and professional background.

TEX. RULES DISCIPLINARY P.R. 3.10, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (West 2005). In its final judgment, the trial court stated "[t]he Court, after considering all of the factors listed in Rule 3.10 of the Texas Rules of Disciplinary Procedure, finds that the proper discipline of the Respondent for each occurrence of professional misconduct is disbarment." Olsen argues the trial court could not have consider all of the rule 3.10 factors because the Commission did not present evidence on all of the factors at the sanction hearing, and the summary judgment evidence already before the court did not provide evidence as to all of the factors.

 The Texas Supreme Court has held that a court need only *consider* the rule 3.10 factors in sanctioning an attorney. *Kilpatrick*, 874 S.W.2d at 659; *Eureste*, 76 S.W.3d at 202. Moreover, a court is not required to find that every rule 3.10 factor has been satisfied before ordering

disbarment. *See Eureste*, 76 S.W.3d at 202 (discussed evidence that addressed only six of the twelve factors in concluding the trial court had considered the relevant factors outlined in rule 3.10); *see also Minnick*, 790 S.W.2d at 93 (concluding the trial court was within its discretion in ordering disbarment, the appellate court noted that some of the 3.10 factors were the subject of disputed evidence, while others appeared to weigh in the attorney's favor). A court is not required to hold an evidentiary hearing, or to take evidence on these factors. *Kilpatrick*, 874 S.W.2d at 659 ("The court may, in its discretion, hold a separate evidentiary hearing and take evidence on these issues."); TEX. RULES DISCIPLINARY P.R. 3.10.

 At the sanction hearing, the trial court heard testimony from Judge Price and Giron regarding the nature and degree of Olsen's misconduct, the seriousness and circumstances surrounding Olsen's misconduct, the loss or damage to Olsen's client, damage to the profession, profit to Olsen, respect for the legal profession, and other relevant evidence. On appeal, Olsen challenges the admissibility of Judge Price's testimony because he was not sworn in as a witness. However, Olsen did not attend the hearing and therefore, failed to raise an objection that Judge Price's statements were not under oath. Consequently, the oath was waived and Judge Price's statements were properly considered as evidence. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex.1997); *Fullenwider v. Am. Guar. & Liab. Ins. Co.*, 821 S.W.2d 658, 662 (Tex.App.-San Antonio 1991, writ denied).

Considering the range of sanctions available to the court, the conduct at issue, and the trial court's reasoning, we conclude the trial court did not abuse its broad discretion in imposing the sanction of disbar-

ment upon Olsen. Olsen's thirteenth and fourteenth issues are overruled.

### Issue Sixteen

In addition to disbarment, the trial court ordered that Olsen "pay all reasonable and necessary attorneys' fees and direct expenses to the State Bar of Texas in the amount of $10,732.70." Under Texas Rule of Disciplinary Procedure 1.06(y), a proper sanction may include payment of attorneys' fees and all direct expenses associated with the proceeding. TEX. RULES DISCIPLINARY P.R. 1.06(Y); *see Goldstein v. Comm'n for Lawyer Discipline*, 109 S.W.3d 810, 815 (Tex.App.-Dallas 2003, pet. denied). Olsen challenges the award of attorneys' fees to the Commission, claiming there was no admissible evidence that the Commission's attorneys' fees were reasonable or necessary because the testimony of Susan Farris, the Commission's attorney, was unsworn when she testified regarding fees.

According to the record, Farris informed the trial court she would like to testify as to attorneys' fees. The court stated she did not need to take the witness stand but could testify from the counsel table. The court then asked "you're licensed and in good standing with the State Bar of Texas, aren't you?" When Farris answered "yes," the court instructed her to proceed with her testimony. Farris testified as to the number of hours spent preparing and trying the case and billing rates for herself and her legal assistant. She testified that the State Bar had incurred a total of $10,454.25 in reasonable and necessary attorneys' fees. In addition, she testified the State Bar had incurred $278.45 in recoverable costs, for a total of $10,732.70.

■ While it is true that Farris did not take an oath prior to testifying, Olsen's failure to object at the time of the testimony waived any claim that Farris's testimony was inadmissible. *Banda*, 955 S.W.2d

at 272; *Valdez v. Francis*, 1992 WL 33019, at *2 (Tex.App.-Dallas Feb. 6, 1992, no writ). Olsen did not appear at the sanctions hearing and did not present any controverting evidence. The trial court's award of attorneys' fees and costs was based upon testimony presented by the Commission's attorney. We conclude the trial court did not abuse its discretion in awarding attorneys' fees and costs to the Commission. *See Valdez*, 1992 WL 33019, at *2. Olsen's sixteenth issue is overruled.

### CONCLUSION

Based on our conclusions above, we affirm the judgment of the trial court.